PETER L. CARR, IV (#256104)
pcarr@thePLClawgroup.com
Na'Shaun L. Neal (#284280)
nneal@thePLClawgroup.com
Lauren K. McRae (#331296)
lmcrae@thePLClawgroup.com
**PLC Law Group, APC**
3756 Santa Rosalia Dr., Suite 326
Los Angeles, CA 90008
Telephone: (310) 400-5890
Facsimile:  (310) 400-5895

Attorneys for Plaintiff
Jacqueline Stevenson, Jaylin Stevenson,
A.R., a Minor & J.S., a Minor, By and Through
Their Guardian Ad Litem, Jacqueline Stevenson

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE STEVENSON, JAYLIN STEVENSON, A.R., a Minor and J.S., a Minor, By and Through Their Guardian Ad Litem, JACQUELINE STEVENSON<br>Plaintiffs,<br>vs.<br>COUNTY OF SAN BERNARDINO, DEPUTY CHRISTIAN BARAJAS (13849); and DOES 1 through 10 inclusive,<br>Defendants. | Case No:<br><br>**PLAINTIFF'S COMPLAINT FOR DAMAGES**<br><br><br>**REQUEST FOR JURY TRIAL** |

## INTRODUCTION

1.    This case challenges the abuse of discretion, racial profiling, excessive force and malicious prosecution that deprived Plaintiffs Jacqueline Stevenson, Jaylin Stevenson, and minors A.R. and J.S. of their federal and state rights.

2.      Plaintiffs complain of Defendants County of San Bernardino, Deputy Christian Barajas (13849), and DOES 1 through 20, inclusive, as follows:

## VENUE AND JURISDICTION

3.      This Court has original jurisdiction under 28 U.S.C. §§ 1331, 1343 (a)(3)-(4) because Plaintiff asserts claims arising under the laws of the United States that include 42 U.S.C. § 1983 and the Fourth and Fourteenth Amendments of the United States Constitution.

4.      This court has supplemental jurisdiction over Plaintiff's claims arising under state law pursuant to 28 U.S.C. § 1367 (a) because those claims are so related to the federal claims that they form part of the same case or controversy under Article III of the United States Constitution.

5.      The venue is proper in the Central District of California pursuant to 28 U.S.C. §§ 1391 (b) and (e). This court is proper because Defendants reside in this district and the unlawful actions challenged occurred in this district.

## CLAIMS STATUTE REQUIREMENT

6.      The subject incident giving rise to the instant action occurred on February 15, February 23, and March 2, 2023. On July 21, 2023, Plaintiff filed a timely Governmental Claim for Damages with the County of San Bernardino. On August 30, 2023 said claim was denied.

## PARTIES

7.      At all relevant times herein, PLAINTIFF Jacqueline Stevenson (hereinafter "Ms. Stevenson" or "Plaintiff") was and is a resident of the State of California in the County of San Bernardino.

8.       At all relevant times herein, PLAINTIFF Jaylin Stevenson (hereinafter "Mr. Stevenson" or "Plaintiff") was and is a resident of the State of California in the County of San Bernardino.

9.      At all relevant times herein, Plaintiff A.R., a minor, by and through their

Guardian Ad Litem, JACQUELINE STEVENSON (Hereinafter "A.R.") was a minor (below the age of eighteen) residing within the County of San Bernardino. At the time of the incident herein described, A.R. was sixteen years old.

10.    At all relevant times herein, Plaintiff J.S., a minor, by and through their Guardian Ad Litem, JACQUELINE STEVENSON (Hereinafter "J.S.") was a minor (below the age of eighteen) residing within the County of San Bernardino. At the time of the incident herein described, J.S. was a twelve year old child with special needs.

11.    Defendant COUNTY OF SAN BERNARDINO (hereinafter "COSB" or "COUNTY") is, and at all times in this complaint was, an incorporated public entity duly authorized and existing as such in and under the laws of the State of California; and at all times herein mentioned, Defendant COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations, and practices affecting the operation of the SAN BERNARDINO SHERIFF'S DEPARTMENT (hereinafter referred to as "SBSD") and its tactics, methods, practices, customs, and usages.

12.    DEPUTY CHRISTIAN BARAJAS (13849) (Hereinafter referred to as "DEPUTY BARAJAS") is, and at all times in this complaint was, an individual employed by COUNTY and/or its subsidiaries as a police officer, acting within the course and scope of his employment and also within his actual and apparent authority as an officer of a public entity, COUNTY.

13.    At all relevant times mentioned herein and material hereto, the Defendant DOE Officers described below engaged in law enforcement as police officers, sergeants, captains, lieutenants, and or/civilian employees, agents and representatives of Defendant COUNTY, duly employed as Sheriff's deputies by the SBSD, who acted in the course and scope of their employment at all times

relevant to the acts and omissions herein alleged.

14.    PLAINTIFF is informed and believes and thereon alleges that each of the Defendants designated as a DOE are intentionally and negligently responsible in some manner for the events and happenings herein referred to, and thereby proximately caused injuries and damages as herein alleged. The true names and capacities of DOES 1 through 10, inclusive, and each of them, are not now known to PLAINTIFF who, therefore, sues said Defendants by such fictitious names. PLAINTIFF will seek leave to amend this Complaint to show their true names and capacities when same have been ascertained.

15.    Defendants, and each of them, acted under color of law and did the acts and omissions hereinafter alleged in bad faith and with knowledge that their conduct violated established and commonly understood substantive and procedural law.

## FACTS COMMON TO ALL COUNTS

16.    Plaintiffs Jaqueline Stevenson, Jaylin Stevenson, J.S., and A.R. are African American.

17.    On February 15, 2023, Jaqueline Stevenson's eighteen-year-old son, Khaiari, was engaged in verbal argument with his girlfriend at his other's home.

18.    Ms. Stevenson called the girlfriend's mother to facilitate picking up the girl's belongings from her home.

19.    Approximately one hour and thirty minutes after this call, SBSD deputies appeared at Ms. Stevenson's residence. The identity of the individual who called emergency services is unknown to the Plaintiffs.

20.    By the time SBSD deputies arrived, Khiari and his girlfriend were no longer at the residence.

21.    Deputy BARAJAS knocked on the front metal security door.

22.    Jaylin Stevenson, Ms. Stevenson's nineteen-year-old son and a promising

military recruit, opened the front door and answered Deputy BARAJAS from behind the metal security door.

23. While Mr. Stevenson and Deputy BARAJAS were speaking, a female SBSD Sheriff's Deputy, DOE DEPUTY # 1, walked towards them and stood behind Deputy BARAJAS.

24. Deputy BARAJAS informed Mr. Stevenson that the deputies were there to procure an iPad and phone belonging to Khairi's girlfriend. Mr. Stevenson informed the deputies that Khairi and his girlfriend were no longer at the residence.

25. Deputy BARAJAS requested Mr. Stevenson retrieve the iPad and phone. Mr. Stevenson complied.

26. When Mr. Stevenson attempted to hand the iPad and phone to Deputy BARAJAS, Deputy BARAJAS grabbed both devices as well as Mr. Stevenson's right hand, which he grabbed at the wrist with the material of Mr. Stevenson's hoodie. Mr. Stevenson became visibly confused and asked, "Why?"

27. Deputy BARAJAS and DOE DEPUTY # 1 pulled Mr. Stevenson out of his home. DOE DEPUTY # 1 held Mr. Stevenson's left arm in place while Deputy BARAJAS handcuffed him.

28. Mr. Stevenson said, "So, you're going to put me in custody because I don't know where my brother is? That's crazy." The deputies responded, "Yes."

29. Deputy BARAJAS proceeded to question Mr. Stevenson about the phone and iPad, alleging that they had been stolen. Mr. Stevenson was confused as to why he was being unlawfully arrested and requested his mother be present.

30. Deputy BARAJAS and DOE DEPUTY # 1 eventually released Mr. Stevenson.

31. After the incident, Ms. Stevenson emailed SBSD to submit a formal complaint about the actions of Deputy BARAJAS and DOE DEPUTY # 1.

32.   On February 23, 2023, just a week after the aforementioned incident on February 15th, Deputy BARAJAS returned to the Stevenson residence with five other SBSD deputies, DOE DEPUTIES # 2-5.

33.   DOE DEPUTIES # 2-5 and Deputy BARAJAS repeatedly rang, aggressively knocked on, and kicked the front door of the Stevenson home. They yelled simultaneous commands to open the door.

34.   Jaylin Stevenson and a friend of his approached the door but did not open it.

35.   In response, the DEFENDANT DEPUTIES forced entry into the home through the front door without receiving consent or a lawful court order to enter.

36.   Once inside, DEFENDANT DEPUTIES drew firearms. They ordered Jaylin Stevenson and his friend at gunpoint to show their hands and lie face-down on the ground.

37.   Lights from the DEFENDANT DEPUTIES' weapons were pointed at the heads of these two young men.

38.   As Mr. Stevenson began complying with this order by bending down towards the ground, DOE DEPUTY # 2, identified as wearing eyeglasses, approached Mr. Stevenson and forcefully pushed him towards the ground.

39.   DOE DEPUTY # 2 handcuffed Mr. Stevenson. DEFENDANT DEPUTIES informed Mr. Stevenson that he was under arrest for allegedly obstructing the law.

40.   The DEFENDANT DEPUTIES entered the home and searched the families' bedrooms.

41.   DEFENDANT DEPUTIES ordered Khairi at gunpoint to step outside of his room.

42.   DEFENDANT DEPUTIES handcuffed Mr. Stevenson's minor-aged siblings, sixteen-year-old A.R. and twelve-year-old J.S.

43.    Khairi's girlfriend, who was present, was not handcuffed nor held at gunpoint by DEFENDANT DEPUTIES. DOE DEPUTY # 3, identifiable by his closely cropped haircut with a high fade, pulled out a chair for Khairi's girlfriend to sit in.

44.    DOE DEPUTIES # 2 and 4, identifiable by his sunglasses and hat, continued the DEFENDANT DEPUTIES' search of Ms. Stevenson's residence.

45.    DEFENDANT DEPUTIES escorted Jaylin Stevenson and his brother Khiari outside of their home. Jaylin Stevenson was shirtless at the time.

46.    DOE DEPUTIES # 3 and 2 bent Jaylin Stevenson's left arm in a high upward, unnatural position.

47.    DEFENDANT DEPUTIES arrested Jaylin Stevenson for first degree robbery and accessory.

48.    On March 2, 2023, SBSD deputies appeared at the Stevenson residence for a third time. A team of seven DOE DEPUTIES claimed to have a valid search warrant and descended upon the home with weapons drawn.

49.    DOE DEPUTY # 6, who was wearing all green, provided cover to the team by approaching the residence, weapon drawn, and aiming it at the home's front windows.

50.    The other DEFENDANT DEPUTIES banged on the front door, yelling, "Search warrant! Search warrant! Open the door!" DEPUTY BARAJAS and female DOE DEPUTY # 1 were present among the group.

51.    Jaylin Stevenson immediately ran to open the front door to attempt deescalating the situation. He announced he was going to open the door.

52.    Before Mr. Stevenson could open the door, DEFENDANT DEPUTIES kicked the door and used an entry ram to break the front door down.

53.    Before entering the residence, DOE DEPUTY # 7 covered a security camera adjacent to the home's security door with a white cloth or paper to

obscure the unlawful actions of the raiding DEFENDANT DEPUTIES.

54.    DEFENDANT DEPUTIES entered the Stevenson residence with weapons drawn.

55.    DEFENDANT DEPUTIES ordered Mr. Stevenson to put his hands up at gunpoint. Mr. Stevenson instinctively lay on the ground, remembering the events of February 23rd when he was ordered to do so. DEFENDANT DEPUTIES aggressively yelled at Mr. Stevenson to get up, raise his hands above his head, and walk backwards to the DEFENDANT DEPUTIES who were still near the front door. From there, DEFENDANT DEPUTIES handcuffed Mr. Stevenson, escorted him to his front lawn, and patted him down.

56.    DEFENDANT DEPUTIES also held Khairi and his seventeen-year-old friend at gunpoint before handcuffing both of them.

57.    DEFENDANT DEPUTIES searched the Stevenson residence in teams. While doing so, they photographed the interior and exterior of the home, including license plates of cars in the driveway.

58.    DEFENDANT DEPUTIES disabled security cameras inside of the home to conceal their unlawful actions. Ms. Stevenson overheard DEFENDANT DEPUTIES discussing the presence of cameras inside of her home.

59.    DEFENDANT DEPUTIES unlawfully arrested Jaylin Stevenson and transported him to Victorville Sheriff's Station.

60.    As a result of the DEFENDANTS' actions, Plaintiffs have suffered emotional, mental, and emotional trauma, distress and suffering. The youngest child, J.S., expressed thoughts of self-harm after these unlawful and violent intrusions into his family's home.

## FIRST CAUSE OF ACTION

## EXCESSIVE FORCE

## 42 U.S.C. § 1983

## (Against DEPUTY BARAJAS and DOES 1 through 20, inclusive)

61.     Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

62.     This cause of action arises under Title 42 United States Code § 1983, wherein Plaintiff seeks to redress deprivation under color of law a privilege or immunity secured under the Fourth Amendment.

63.     As a result of the above-described intentional acts of the DEFENDANT DEPUTIES, collectively and individually, Plaintiff's Fourth Amendment constitutional right to be free from excessive force, as applied to state actors by the Fourteenth Amendment, was violated when:

  a. Deputy Barajas and Doe Deputy # 1 pulled Mr. Stevenson out of his home and detained him on February 15, 2023;

  b. Defendant Deputies and Barajas pointed firearms at Plaintiffs;

  c. Deputies handcuffed minor children without legal justification on February 23, 2023.

64.     At no point did Mr. Stevenson, J.S., A.R., Khairi, or Ms. Stevenson pose a reasonable threat of violence or danger to the Defendant Officers or to any other individual. Jaylin Stevenson, Jacqueline Stevenson, J.S., A.R., and Khairi made no aggressive movements, furtive actions, or physical movements that would have suggested to any reasonable officer that Ms. Stevenson or her children had the will or ability to inflict substantial bodily harm against any individual.

65.     DEFENDANT DEPUTIES are liable for Plaintiff's injuries, either because they were integral participants in the excessive force, or because they failed to

prevent these violations.

66.    As a result of the DEFENDANT DEPUTIES excessive force, Ms. Stevenson and her children suffered various mental and emotional consequences including embarrassment, loss of dignity, mental anguish and severe emotional distress. Ms. Stevenson suffered damage to her home and loss of wages.

67.    The conduct of DEFENDANT DEPUTIES was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Ms. Stevenson and her children, and therefore warrants the imposition of exemplary and punitive damages as to the individual Defendants.

68.    Accordingly, DEFENDANT DEPUTIES are each liable to Plaintiff for compensatory and punitive damages, under 42 U.S.C. § 1983. Plaintiff also seeks litigation costs under this claim.

## SECOND CAUSE OF ACTION

### FIRST AMENDMENT RETALIATION

### 42 U.S.C. § 1983

### (Against DEPUTY BARAJAS and DOES 1 through 20, inclusive)

69.    Plaintiff incorporates by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

70.    All of the acts of Defendants were done under color of state law.

71.    The acts of DEFENDANT DEPUTIES deprived Ms. Stevenson and her children of their privileges, and immunities secured by the Constitution and laws of the United States, including but not limited to rights under the First Amendment of the United States Constitution, incorporated and made applicable to the states by the Fourteenth Amendment, by among other things, retaliating against Mr. Jaylin Stevenson for exercising his First Amendment rights to freedom of speech and expression.

72.   Mr. Stevenson engaged in constitutionally protected activity on February 15, 2023 when he asked "Why" he was being handcuffed and said, "So, you're going to put me in custody because I don't know where my brother is? That's crazy."

73.   DEFENDANT DEPUTIES' second contact at Plaintiffs' residence was in response to Plaintiff Jacqueline Stevenson reporting the misconduct of the deputies on February 15, 2023.

74.   Plaintiffs' protected speech and conduct was a substantial and motivating factor in DEFENDANT DEPUTIES' decision to retaliate.  This was demonstrated by, among other things, the fact that DEFENDANT DEPUTIES took retaliatory actions against Mr. Stevenson by alleging that the iPad and phone had been stolen, questioning him regarding the iPad and phone, and returning to his residence on February 23 and March 2, 2023.

75.   As a direct and proximate result of the aforementioned unlawful acts of DEFENDANT DEPUTIES, Mr. Stevenson, his mother, and his siblings sustained and incurred damages for physical injury and pain, mental anguish and emotional distress.

76.   Each of the DEFENDANT DEPUTIES were personally involved and an integral participant in the violation of Ms. Stevenson and her children's constitutional rights, because each deputy was aware of unlawful actions of the other deputies, did not object to these violations of their rights.

77.   In doing the foregoing wrongful acts, DEFENDANT DEPUTIES and other involved DOE Officers 1-20 each acted in reckless and callous disregard for Ms. Stevenson and her children's constitutional rights. Each wrongful act was willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future similar misconduct.

78.   Plaintiff also seeks attorney fees under this claim pursuant to 42 U.S.C. §

1988.

## THIRD CAUSE OF ACTION

## EQUAL PROTECTION VIOLATION

## 42 U.S.C. §1983

## (Against DEPUTY BARAJAS and DOES 1 through 20, inclusive)

79.    Plaintiff repeats and re-alleges each and every preceding allegation of this Complaint with the same force and effect as if fully set forth herein.

80.    Defendant Deputies, as agents of the SBSD, an institution with a documented history, pattern, and practice of harassing and using unlawful force against non-white citizens, have demonstrated a propensity for animus against African American civilians.

81.    Defendant Officers invidiously discriminated against Plaintiff by:

    a.  Depriving Plaintiff of her right to be free from unreasonable seizures by collectively using unreasonable force in violation of the Fourth Amendment and Fourteenth Amendments as recited above because she is African American;

    b.  Depriving Plaintiff of her right to be free from malicious prosecution by making false police reports and agreeing to testify to the statements contained therein because she is African American; and

    c.  Depriving Plaintiff of her right to be free from racial animus during police contact by threatening Plaintiff as described in this complaint.

82.    Defendant Deputies did not treat other similarly situated persons in Ms. Stevenson's community similarly and the sole basis for their discriminatory conduct was based on Plaintiffs' African American heritage.

83.    By virtue of the foregoing, DEFENDANT DEPUTIES deprived Plaintiffs of

(a) equal protection of the law and (b) equal protection and immunities under the law, and for the purpose of preventing and hindering the constituted authorities from giving and securing to Plaintiffs' equal protection of the law and deprivation of liberty and property without due process of the law.

84.    As a direct and proximate result of the foregoing, Plaintiffs have been injured as set forth above.

85.    In doing the foregoing wrongful acts, DEFENDANT DEPUTIES each acted in reckless and callous disregard for Plaintiffs' constitutional rights. Each wrongful act was willful, oppressive, fraudulent, and malicious, thus warranting the award of punitive damages against each individual Defendant in an amount adequate to punish the wrongdoers and deter future similar misconduct.

86.    Plaintiffs also seek attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## FOURTH CAUSE OF ACTION

## MALICIOUS PROSECUTION

### 42 U.S.C. § 1983

### (Against DEPUTY BARAJAS and DOES 1-20, inclusive)

87.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

88.    DOE DEPUTIES, while acting under color of law, deprived Plaintiffs of their civil rights, more particularly, her right to be free from malicious prosecution.

89.    DEFENDANT DEPUTIES contributed to, caused, and/or initiated a criminal prosecution against Plaintiff with malice and/or with the purpose of depriving her of her constitutional rights.

90.    With knowledge that their report would be used by County Counsel when deciding to bring charges against Mr. Stevenson, on information and belief, DEFENDANT DEPUTIES made false statements in their report to cover the fact Defendants violated Mr. Stevenson's rights by using excessive force against him.

91.    Plaintiff brings this action under federal law. The constitutional source against malicious prosecution is primarily the due process clause of the Fourteenth Amendment, and Plaintiffs' due process rights were violated by the conduct alleged herein. Plaintiffs bring this claim as both a procedural and substantive due process violation. To the extent that any court were to conclude that the source of Plaintiffs' rights to be free from malicious prosecution is any constitutional source other than due process (such as the Fourth Amendment or Sixth Amendment right to a fair trial), this claim is brought on those bases as well.

92.    As a result of DEFENDANT DEPUTIES' malicious prosecution of Plaintiffs, Plaintiffs have suffered and may continue to suffer severe emotional trauma and extreme mental distress.  Mr. Stevenson also incurred attorneys' fees to defend himself against the malicious prosecution.

93.    The conduct of DEFENDANT DEPUTIES was willful, wanton, malicious, and done with an evil motive and intent and a reckless disregard for the rights and safety of Plaintiff and therefore warrants the imposition of exemplary and punitive damages against him.

94.    Plaintiff brings this claim individually and seeks general and special damages, in an amount to be determined at trial. Plaintiff also seeks reasonable costs and attorneys' fees under 42 U.S.C. § 1988.

# FIFTH CAUSE OF ACTION

## MUNICIPAL LIABILITY FOR UNLAWFUL CUSTOM AND PRACTICE

## 42 U.S.C. § 1983

### (Against Defendant COUNTY)

95.    Plaintiff incorporates by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

96.    Defendant COUNTY, is and at all times herein mentioned, has been a public entity and an incorporated municipality duly authorized and existing as such in and under the laws of the State of California and at all times herein mentioned, Defendant COUNTY possessed the power and authority to adopt policies and prescribe rules, regulations and practices affecting the operation of the SBPD and its tactics, methods practices, customs and usages.

97.    At all times herein mentioned, DEFENDANT DEPUTIES and each of them, were employees acting under the COUNTY and SBPD's direction and control, who knowingly and intentionally promulgated, maintained, applied, enforced and suffered the continuation of policies, customs, practices and usages in violation of the First, Fourth and Fourteenth Amendments respectively to the United States Constitution, which customs, policies, practices and usages at all times herein mentioned required and encouraged the employment, deployment and retention of persons as peace officers who have demonstrated their brutality, discriminatory practices, and numerous other serious abuses of their powers as peace deputies during their employment by the COUNTY.

98.    The unconstitutional policies, practices or customs promulgated, sanctioned or tolerated by Defendant COUNTY and SBPD include, but are not limited to:

a.      Defendants COUNTY and SBPD had knowledge, prior to and since

this incident, of similar allegations of wrongful and unlawful battery, dishonesty and improper tactics, and corruption by SBPD employees, including the individual Defendants herein, and refused, with deliberate indifference, to enforce established administrative procedures and training to ensure public safety, protection of civilians' rights and the Plaintiffs' liberty interests;

b.    Defendant COUNTY and SBPD refused to adequately discipline individual employees found to have committed similar acts of dishonesty and misconduct;

c.    Defendant COUNTY and SBPD refused to competently and impartially investigate allegations of abuse and misconduct alleged to have been committed by COUNTY and SBPD employees;

d.    Defendant COUNTY and SBPD reprimanded, threatened, intimidated, demoted and fired employees who reported acts of abuse by other COUNTY and SBPD employees;

e.    Defendant COUNTY and SBPD covered up acts of misconduct and abuse by COUNTY and SBPD employees and sanctioned a code of silence by and among SBPD Deputies;

f.    Defendant COUNTY and SBPD failed to adequately supervise the actions of employees under its control;

g.    Defendant COUNTY and SBPD failed to adequately discipline SPBD deputies for policing in a racially discriminatory fashion.

h.    Defendant COUNTY and SBPD failed to discipline SBPD deputies for using unreasonable force against civilians;

i.    Defendant COUNTY and SBPD tacitly condones and encourages a conspiracy of silence among its employees for the purpose of concealing and furthering wrongful and illegal conduct;

j.    Defendant COUNTY and SBPD tacitly condones and encourages

its deputies to refrain from intervening when fellow officers engage in misconduct;

k.    Defendant COUNTY and SBPD tacitly condones and encourages use of unreasonable force against civilians;

l.    Defendant COUNTY and SBPD tacitly condones and encourages its officers to retaliate against civilians for being treated disrespectfully;

m.    Defendant COUNTY and SBPD tacitly condones and encourages its officers to falsify evidence and commit perjury to escape civil liability; and

n.    Defendant COUNTY and SBPD fostered and encouraged an atmosphere of lawlessness, abuse and misconduct, which by February 2023 and thereafter, represented the unconstitutional policies, practices and customs of the CITY and LAPD.

99.    At all times herein mentioned, deputies employed by Defendant COUNTY and its police department were, and are, regularly using excessive force and harassing citizens with impunity as indicated above. In particular, SBPD deputies harassed civilians without any legal justification and used excessive force on persons who were unarmed and/or did not represent a threat to life or of serious bodily injury. These officers encouraged, and in some cases directly participated, in engaging in excessive force in similar cases where civilians exercised their rights under the United States Constitution. These incidents did not result in discipline and this culture of a lack of accountability was a moving force in the excessive force, retaliation and malicious prosecution suffered by Plaintiff.

100.    Defendant COUNTY and SBPD's excessive force and malicious prosecution of Plaintiff are a part of practice and pattern of the COUNTY's unlawful mistreatment and criminalization of African Americans.

101.    The following are a list of incidents exemplifying the aforementioned policies, customs, practices and usages of Defendants COUNTY and SBSD:

a. While only eight percent of the San Bernardino County population is African American, approximately nineteen percent of people arrested and sixteen percent of people killed by SBSD are African American.[1]

b. Data shows that SBSD uses more force per arrest than 69% of law enforcement entities in the United States and more police shootings than 87% of other Departments.[2]

c. Between 2016 and 2021, out of 662 civilian complaints of police misconduct, the County ruled only 9% in favor of the civilians.[3]

d. In 2023, the COUNTY settled a lawsuit for $500,000 brought against them by a truck driver who had been arrested in retaliation for making a snide remark to SBSD deputies.[4]

a. In 2023, Tommy Mark Franks, Jr. was awarded $375,000 in compensatory damages due to a five-hour false arrest by the SBSD.[5]

b. In 2022, the COUNTY and SBPD agreed to pay a $950,000 settlement after a lawsuit by the Department of Justice found that the COUNTY had enacted policies that made Black renters four times more likely to be evicted. This landmark settlement is one example of the COUNTY and SBSD promulgating racial discrimination.[6]

---

[1] "Police Violence by Race," San Bernardino County Sheriff's Department, *Police Scorecard | policescorecard.org,* Accessed February 26, 2024.
[2] "Police Shootings" *and "*Less-Lethal Force," San Bernardino County Sheriff's Department, *Police Scorecard,* Accessed February 26, 2024.
[3] "Key Findings," San Bernardino Sheriff's Department, *Police Scorecard,* Accessed February 26, 2024.
[4] Tony Saavedra, "Truck driver gets $500,000 for wrongful arrest by San Bernardino County Deputies," The Sun, February 7 2023.
[5] *Tommy Mark Franks, Jr. v. County of San Bernardino (2023)*
[6] Tierney Sneed, "DOJ Touts first of its kind settlement in racial discrimination case," CNN, December 14, 2022, https://www.cnn.com/2022/12/14/politics/justice-department-housing-hesperia-settlement-discrimination/index.html

c. In 2018, a jury awarded $33.5 million in damages to the family of Nathanael Pickett, an African American man who was fatally shot and negligently denied aid by a SBPD deputy.[7] Deputies had been accused of trying to intimidate witnesses.[8]

d. A 2016 lawsuit by the Prison Law Office documented severe excessive force issues and disability-rights violations committed by SBSD employees in COUNTY prisons.[9]

e. In 2014, David Scott brought a lawsuit against COUNTY after a SBSD deputy arrested three eleven-year-old girls and brought them to a police station to teach them a lesson for not taking the SBSD seriously. This matter settled for $390,000.[10]

f. SBSD shot Penny Trent after arresting her husband for domestic violence; the deputies arrested her and interrogated her for eight hours to cover up the unlawful shooting. The matter settled for $600,000 in 2013.[11]

g. SBSD's deficient and/or unlawful policies, practices, and customs were exposed when a 2005 lawsuit against the entity demonstrated sheriff's deputies' abuse of inmates via unlawful strip searches at the county's jails that led to humiliation, embarrassment, loss of privacy, and physical pain. The lawsuit ended in a $25.5 million settlement.[12]

---

[7] "Jury Awards $33.5 Million to Parents of Man Fatally Shot by SB County Deputy," NBC Los Angeles, march 15, 2018.

[8] Leticia Juarez, "Family of Nathaniel Pickett, Barstow Man Shot, killed by deputy, to file lawsuit," ABC7, June 2, 2016

[9] *George Topete and Zachery Shovey v. County of San Bernardino, Case No. 5:16-cv-355*

[10] *David Scott v. County of San Bernardino, et al.*

[11] *Penny Trent v. County of San Bernardino, et al.*

[12] John E. Dannenberg, "$25.5 Million Awarded in California County Jail Strip Search Suit," *Prison Legal News,* June 15, 2008.

102.   On information and belief, DEFENDANT DEPUTIES attended training programs related to anti-discrimination prior to the incident with Plaintiffs.

103.   On information and belief, DEFENDANT DEPUTIES attending training programs related to use of force prior to the incident with Plaintiffs.

104.   Despite receiving training designed to prevent the conduct described in this Complaint, DEFENDANT DEPUTIES violated Plaintiffs' constitutional rights as described in the Complaint.

105.   Prior to the incident, COUNTY knew prior to the incident, its training program was insufficient to prevent the type of conduct experience by Plaintiffs but did nothing to prevent the conduct.

106.   Sheriff Shannon D. Dicus is the final decision maker to determine if employee's actions were within policy and procedure and will determine whether any additional actions, investigations or reviews are appropriate.

107.   On information and belief, the Sheriff ratified the DEFENDANT DEPUTIES' conduct described in this Complaint.

108.   The aforesaid policies, customs, practices and usages described in this Complaint were the moving force that caused Plaintiff to be subjected to unconstitutional policing by DEFENDANT DEPUTEIS between February and March 2023.

109.   By reason of the aforesaid policies, customs, practices and usages, Plaintiffs' First, Fourth and Fourteenth Amendments to the United States Constitution were violated.

110.   Plaintiffs also seek attorney fees under this claim pursuant to 42 U.S.C. § 1988.

# SIXTH CAUSE OF ACTION

## NEGLIGENCE

### Cal. Govt. Code §§ 815.2(a), 820(a)

### (Against All Defendants)

111.  Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

112.  Plaintiffs are informed and believes and there upon alleges that DEFENDANT DEPUTIES, and each of them, failed to exercise reasonable and ordinary care in committing the acts alleged herein, by actions and inactions which include, but are not limited to, negligently using excessive and unreasonable physical force upon the persons of Plaintiffs, negligently submitting false police reports, and negligently failing to intercede when fellow DEFENDANT DEPUTIES violated Plaintiffs' constitutional rights.  All of these negligent acts proximately caused severe injuries to Plaintiffs, as described herein.

113.  As a result of these acts, Plaintiffs suffered injuries including mental and emotional distress, and Jaylin Stevenson was forced to defend himself against malicious prosecution. Additionally, due to the negligent acts of each of these DEFENDANT DEPUTIES, Mr. Stevenson suffered and will continue to suffer severe emotional distress and mental anguish.

114.  As a proximate result of the above-mentioned conduct of DEFENDANT DEPUTIES, and each of them, Plaintiffs have incurred attorneys' fees and other incidental expenses in an amount according to proof at trial.

115.  As a result of their conduct, DEFENDANT DEPUTIES are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

116.  Defendant COUNTY  is liable under California Government Code Sections

815.2(a) and 820(a) for Plaintiff's injuries proximately caused by the negligent acts and omissions of its employees, described above.

## SEVENTH CAUSE OF ACTION

## ASSAULT AND BATTERY

### (Against All Defendants)

117.   Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

118.   DEFENDANT DEPUTIES, acting individually and in concert with other law enforcement agents, assaulted and battered Plaintiffs by acts which included, but were not limited to: unlawfully entering Plaintiffs' residence on February 23 and March 2; pointing firearms at Plaintiffs, including minors, on February 23 and March 2; unlawfully handcuffing Plaintiffs on February 15, February 23, and March 2; applying physical touch and force to Plaintiffs; forcing Mr. Stevenson to the ground; and breaking down Ms. Stevenson's front door.

119.   In assaulting and battering Plaintiffs as described herein, Defendant DEPUTIES proximately caused severe distress and physical pain to Plaintiffs.

120.   Both prior to and during the time in which they were assaulted and battered, Plaintiffs were not armed with any kind of weapon and posed no reasonable threat of violence to the DEFENDANT DEPUTIES nor to any other individual. When they were attacked, as described herein, Plaintiffs made no aggressive movements, no furtive gestures, and no physical movements which would suggest to a reasonable officer that they had the will or ability to inflict bodily harm against any individual.

121.   As a result of the above alleged conduct, Plaintiffs suffered severe bodily harm including, but not limited to, pain as well as severe mental and emotional distress.

122.    As a result of these acts, Plaintiffs were placed in great fear of their life and physical well-being. Moreover, due to the wrongful, intentional, and malicious acts of the DEFENDANT DEPUTIES, Plaintiffs have suffered and will continue to suffer severe emotional distress and mental anguish.

123.    The aforementioned acts and omissions alleged herein were intended by each DEFENDANT DEPUTY to cause injury to Plaintiffs, and were done with a conscious disregard for the rights and safety of Plaintiffs, as the acts and omissions were willful, wanton, malicious and oppressive, thereby justifying the awarding of compensatory and punitive damages against each of the individual defendants in an amount to be determined according to proof at trial.

124.    The malicious quality of these DEFENDANT DEPUTIES' actions is further evident in their continual attempts to disable or cover security cameras both within and outside of the Stevenson residence.

125.    Defendant COUNTY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiffs' injuries proximately caused by the assault & battery committed by its employees, described above.

**EIGHTH CAUSE OF ACTION**

**VIOLATION OF THE BANE ACT**

**Cal. Civil Code §§ 52 and 52.1**

**(Against All Defendants)**

126.    Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

127.    As alleged herein, Defendants interfered with Plaintiffs' rights under state and federal laws and under the state and federal constitution including, without limitation, the right to be free from excessive force, the right to free speech and expression, the right to due process, and the right to bodily integrity, including his

rights under the First, Fourth and Fourteenth Amendments to the United States Constitution, and his rights under Article 1, Sections 1, 7 and/or 13 of the California Constitution.

128.   By engaging in deliberate indifference to Plaintiffs' rights, Defendants interfered with Plaintiffs' enjoyment of his rights under federal and California law, thus giving rise to claims for damages pursuant to California Civil Code § 52.1.

129.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

130.   As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Plaintiffs sustained and incurred damages for physical injuries, emotional injury and pain, mental anguish, suffering, humiliation, embarrassment, as well as harm to their reputation in the community.

131.   The conduct of Defendant DEPUTIES, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with a conscious disregard for the rights of Plaintiffs, entitling Plaintiffs to an award of exemplary and punitive damages. Plaintiff does not seek punitive damages against the COUNTY.

132.   Defendant COUNTY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiffs' injuries proximately caused by the Bane Act violation committed by its employees, described above.

133.   Plaintiffs seek statutory damages under California Civil Code §52, as well as compensatory and punitive damages according to proof.

# NINTH CAUSE OF ACTION

## VIOLATION OF THE RALPH ACT

### Cal. Civil Code §51.7

### (Against All Defendants)

134.   Plaintiffs incorporate by reference each and every allegation and fact contained in the preceding paragraphs of this complaint as though fully set forth herein.

135.   DEFENDANT DEPUTIES threatened Plaintiffs and committed acts of violence against Plaintiffs—as described in the complaint—because of their race.

136.   While only eight percent of the San Bernardino County population is African American, approximately nineteen percent of people arrested and sixteen percent of people killed by SBSD are African American.[13]

137.   In 2022, the COUNTY and SBPD agreed to pay a $950,000 settlement after a lawsuit by the Department of Justice found that the COUNTY had enacted policies that made Black renters four times more likely to be evicted. This landmark settlement is one example of the COUNTY and SBPD promulgating racial discrimination.[14]

138.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries, either because they were integral participants in the misconduct, or because they failed to intervene to prevent these violations.

139.   As a direct and proximate result of the aforementioned wrongful acts of Defendants, individually and as peace officers, Plaintiffs sustained and incurred damages for physical injuries, emotional distress and mental anguish.

140.   The conduct of the aforementioned Defendant DEPUTIES, individually and as peace officers, was malicious, wanton, oppressive, and accomplished with

---

[13]   "San Bernardino County Sheriff's Department," *Police Scorecard | policescorecard.org,* Accessed February 26, 2024.
[14] Tierney Sneed, "DOJ Touts first of its kind settlement in racial discrimination case," CNN, December 14, 2022, https://www.cnn.com/2022/12/14/politics/justice-department-housing-hesperia-settlement-discrimination/index.html

a conscious disregard for the rights of Plaintiffs, entitling Plaintiffs to an award of exemplary and punitive damages. Plaintiff does not seek punitive damages against the CITY.

141.   Defendant COUNTY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiffs' injuries proximately caused by the Ralph Act violation committed by its employees, described above.

142.   Plaintiffs seek statutory damages under California Civil Code Section 52(b), as well as compensatory and punitive damages according to proof.

**TENTH CAUSE OF ACTION**

**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

**(Against All Defendants)**

143.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

144.   DEFENDANT DEPUTIES, while working for the COUNTY as SBPD employees and acting within the course and scope of their duties, caused Plaintiffs severe emotional distress on February 15, February 23, and March 2, 2023, when:

     a.  DEPUTY BARAJAS and DOE DEPUTY ONE physically pulled Mr. Stevenson out of his home;

     b.  DEPUTY BARAJAS and DOE DEPUTY ONE agreed that they were placing him in custody for not knowing his brother's whereabouts;

     c.  DEPUTY BARAJAS and DOE DEPUTY ONE placed Mr. Stevenson in handcuffs on February 15;

     d.  DEPUTY BARAJAS and DOE DEPUTIES 2-5 unlawfully yelled orders to open and aggressively kicked the Stevensons' front door on February 23;

e.  DEFENDANT DEPUTIES unlawfully entered and searched the
    Stevenson residence;

f.  DOE DEPUTY TWO handcuffed Mr. Stevenson on February 23;

g.  DOE DEPUTY TWO pushed Mr. Stevenson forcefully onto the ground;

h.  DEFENDANT DEPUTIES handcuffed J.S. and A.R.;

i.  DEFENDANT DEPUTIES ordered Khairi out of his room at gunpoint;

j.  DOE DEPUTIES THREE and TWO bent Mr. Stevenson's arm;

k.  DEFENDANT DEPUTIES arrested Mr. Stevenson without cause on
    February 23, 2023;

l.  DEFENDANT DEPUTIES broke down the Stevenson residence door on
    March 2, 2023;

m.  DEFENDANT DEPUTIES terrorized Plaintiffs by screaming and
    banging on their front door on both February 23 and March 2;

n.  DEFENDANT DEPUTIES ordered Mr. Stevenson on the ground at
    gunpoint;

o.  DEFENDANT DEPUTIES handcuffed Mr. Stevenson on March 2;

p.  DEFENDANT DEPUTIES searched the residence on March 2;

q.  DEFENDANT DEPUTIES disabled security cameras in the home.

145.   The aforementioned Defendants' conduct was outrageous and done so to
cause Plaintiffs' emotional distress, or done with reckless disregard to the
probability that Plaintiffs would suffer emotional distress.

146.   As a result of their conduct, Defendants are liable for Plaintiffs' injuries,
either because they were integral participants in the misconduct, or because they
failed to intervene to prevent these violations.

147.   As a direct and proximate cause of Defendants' actions and inactions,
individually and as a peace officers, Plaintiffs suffered and continues to suffer
serious physical pain and injuries for which they are entitled to recover damages.

Moreover, due to the foregoing acts of each of these Defendants, Plaintiffs have suffered and will continue to suffer severe mental anguish and emotional distress.

148.   Defendants' conduct was a substantial factor in causing Plaintiffs' several emotional distress.

149.   In doing the aforementioned acts, Defendants' conduct was intentional, outrageous, malicious, and done for the specific purpose of causing Plaintiffs to suffer extreme emotional and physical distress, fear, anxiety, and mental anguish, entitling Plaintiff sto an award of exemplary and punitive damages as to the individual Defendants.

150.   Defendant COUNTY is liable under California Government Code Sections 815.2(a) and 820(a) for Plaintiffs' injuries proximately caused by the tortious conduct of its employees, described above.

### ELEVENTH CAUSE OF ACTION

### Unreasonable Search and Seizure – Detention and Arrest (42 U.S.C. § 1983)

### (Against All Defendants)

151.   Plaintiffs incorporate by reference each and every allegation contained in the foregoing paragraphs, as well as any subsequent paragraphs contained in the Complaint, as if fully set forth herein.

152.   Defendants, individually and as peace officers, caused Plaintiffs to be detained, arrested and searched in violation of his right to be secure in his person against unreasonable searches and seizures as guaranteed to Plaintiffs under the Fourth Amendment to the United States Constitution and applied to state actors by the Fourteenth Amendment.

153.   As a result of the conduct of Defendants, individually and as peace officers, they are liable for Plaintiffs' injuries, either because they were integral participants in the wrongful search and seizure, or because they failed to intervene to prevent violations.

154.   Plaintiffs were detained without reasonable suspicion and arrested without probable cause. Plaintiffs was also searched without any legal justification.

155.   At no point during the subject incident did Plaintiffs pose a threat to the safety of the officers or the public. Defendant Deputies had no reason to believe Plaintiffs were armed or dangerous.

156.   As a result of Defendant Deputies' unlawful search and seizure, Plaintiffs suffered extreme pain and suffering for which he is entitled to recover damages.

157.   The conduct of Defendants, individually and as peace officers, was willful, wanton, malicious, and done with reckless disregard for the rights and safety of Plaintiffs and therefore warrants the imposition of exemplary and punitive damages as to Defendants.

158.   Plaintiffs seek attorney fees under this claim pursuant to 42 U.S.C. § 1988.

## PRAYER

WHEREFORE, PLAINTIFF requests entry of judgment in her favor and against Defendants as follows:

1.   For compensatory (or general) damages, including pain and suffering, in an amount exceeding the minimum jurisdictional requirement of this Court according to proof;

2.   For special damages according to proof;

3.   For punitive damages as provided by federal and state law, in an amount to be proved against each individual Defendant;

4.   For prejudgment interest;

5.   For attorneys' fees pursuant to 42 U.S.C. § 1988 & California Civil Code § 52.1(h);

6.   For reasonable costs of this suit incurred herein;

7. For such other and further relief as the Court may deem just, proper and appropriate.

Dated: February 26, 2024

**PLC LAW GROUP, APC**

*/s/Na'Shaun L. Neal*

Peter L. Carr, IV
Na'Shaun L. Neal
Lauren K. McRae
Attorneys for Plaintiffs
Jacqueline Stevenson, Jaylin Stevenson, A.R., a Minor & J.S., a Minor, By and Through Their Guardian Ad Litem, Jacqueline Stevenson

-30-
COMPLAINT

1

## REQUEST FOR JURY TRIAL

2          PLAINTIFF hereby respectfully demands a trial by jury on all issues and

3    claims.

4

5    Dated: February 26, 2024                    **PLC LAW GROUP, APC**

6                                                */s/ Na'Shaun L. Neal*

7                                                _____
                                                 Peter L. Carr, IV
8                                                Na'Shaun L. Neal
                                                 Lauren K. McRae
9                                                Attorneys for Plaintiffs
10                                               Jacqueline Stevenson, Jaylin Stevenson,
                                                 A.R., a Minor & J.S., a Minor, By and
11                                               Through Their Guardian Ad Litem,
                                                 Jacqueline Stevenson
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28